```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

| | | |
|---|---|---|
| In re: | : | |
| Ormet Corporation, et al. | : | Case No. 2:05-cv-571 |
|     Debtors. | : | JUDGE GRAHAM |
| _____ | : | Chapter 11 |
| United Steelworkers of America, AFL-CIO-CLC, | : | Judge Sellers (No. 04-51255) |
| | : | |
|     Appellant, | : | |
| vs. | : | |
| Ormet Corporation, et al., | : | |
|     Appellees. | : | |

OPINION AND ORDER

The United Steelworkers of America (the "USW") brings this appeal of the bankruptcy court's March 24, 2005 order granting relief under 11 U.S.C. §1114 to modify retiree benefits. Section 1114 protects retiree benefits while a company is reorganizing, but a bankruptcy court may authorize modifications to benefits if certain statutory requirements are satisfied. Here, the bankruptcy court granted §1114 modifications about three months after it had confirmed the Debtors' plan of reorganization. The USW argues that the bankruptcy court erred in granting the modifications because §1114 relief is not available post-confirmation. The USW further argues that the statutory requirements of §1114 were not satisfied.

The Debtors have moved to dismiss the appeal as equitably moot. They allege that §1114 relief was integral to the Ormet

Corporation's ability to emerge from bankruptcy. The Debtors contend that reversal of the bankruptcy court's order would unravel the reorganization plan.

For the reasons stated below, the Court finds that the appeal is not moot, but further finds that the bankruptcy court did not err in granting §1114 relief. Thus, the USW's appeal is denied.

I.  **BACKGROUND**

Ormet and its subsidiaries produce and market aluminum products in the United States. Before filing for bankruptcy, Ormet operated six facilities in four states. Two of those facilities, a reduction plant and a rolling mill, were located in Hannibal, Ohio.[1] The USW represented approximately 900 employees at the reduction plant and 500 employees at the rolling mill.

On January 30, 2004, Ormet filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Ohio. Ormet continued to operate its business as a debtor in possession.

Ormet and its subsidiaries submitted a joint plan of reorganization (the "Plan") to the bankruptcy court on October 1, 2004. The issue of retiree benefits appeared three times in the final, amended version of the Plan. First, the Plan provides:

> Pursuant to section 1114 of the Bankruptcy Code, payments, if any, due to any person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents for medical, surgical, or hospital benefits . . . under any plan, fund or program [maintained by the Debtors] . . . shall be

---

[1] The Court takes judicial notice that Ormet closed the Hannibal rolling mill in December 2005. See Paul Wilson, *Ex-Ormet Workers' Futures Uncertain*, The Columbus Dispatch, March 12, 2006, at H1.

>continued for the duration of the period the Debtors have obligated themselves to provide such benefits; *provided, however*, that the Reorganized Debtors reserve the right to modify any and all such plans, funds and programs in accordance with the terms thereof and applicable law.

Plan of Reorganization, §6.4 (emphasis in original).

Second, the Plan provides as condition precedent to confirmation that the "Debtors shall have . . . implemented certain modifications to their retiree benefits, in each case in form and substance reasonably acceptable to the Debtors, MatlinPatterson and the Creditors' Committee." Plan of Reorganization, §10.1(c)(ii).

Third, the Plan provides as a condition precedent to effectiveness of the Plan that "[i]f requested to seek relief under section 1114 of the Bankruptcy Code by either MatlinPatterson or the Creditors' Committee, the Debtors shall have obtained such relief by a Final Order." Id., §10.2(k).

On December 15, 2004, the bankruptcy court confirmed the reorganization plan. With respect to retiree benefits, the court found:

>Section 1129(a)(13) requires a plan to provide for the continuation after the effective date of all retiree benefits, as that term is defined in section 1114 ("Retiree Benefits"), for the duration of the period the debtor has obligated itself to provide such benefits. Section 6.4 of the Plan so provides. Accordingly, the requirements of section 1129(a)(13) are satisfied. To the extent the Debtors have the right to unilaterally modify, alter or terminate Retiree Benefits under applicable non-bankruptcy law, such right is not affected by section 1129(a)(13) of the Bankruptcy Code and will continue in full force and effect from and after the Effective Date. Nothing contained in this Order, however, shall restrict or in any way inhibit, prevent or bar the Debtors from seeking relief under section 1114 of the Bankruptcy Code prior to the Effective Date and, if such relief can be and is granted, implementing such relief.

3

Dec. 15, 2004 Confirmation Order, pp. 13-14.

On January 28, 2005, the Debtors made a §1114 proposal to the USW. The proposal called for the creation of a voluntary employee beneficiary association that would be in charge of providing benefits to retirees. The association would negotiate a package of retiree benefits in the marketplace and would decide what level of benefits to provide to retirees. According to the Debtors, the creation of this system would save the company approximately $5.1 million annually.

The Debtors and the USW met to discuss the §1114 proposal but could not reach an agreement. The Debtors filed a §1114 application with the bankruptcy court on February 2, 2005. The USW made a counterproposal on February 22.

After holding hearings, the bankruptcy court granted the Debtors' §1114 application on March 24, 2005. The bankruptcy court found that the proposal satisfied each of the procedural and substantive requirements of §1114.

**II.  EQUITABLE MOOTNESS**

   **A.   Legal Standard**

The equitable mootness doctrine recognizes that "'a plan of reorganization, once implemented, should be disturbed only for compelling reasons.'" City of Covington v. Covington Landing Ltd. Partnership, 71 F.3d 1221, 1225 (6th Cir. 1995) (quoting In re UNR Indus., 20 F.3d 766, 769 (7th Cir. 1994)). Courts developed the doctrine in response to the particular problems presented by the consummation of Chapter 11 reorganization plans. It is a prudential doctrine that protects the need for finality in

bankruptcy proceedings and allows third parties to rely on that finality.  See In re Grimland, Inc., 243 F.3d 228, 231 (5th Cir. 2001); In re Manges, 29 F.3d 1034, 1039 (5th Cir. 1994) (equitable mootness "protects the interests of non-adverse third parties who are not before the reviewing court but who have acted in reliance upon the plan as implemented").  The doctrine "prevents a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract."  In re PWS Holding Corp., 228 F.3d 224, 236 (3d Cir. 2000).

Unlike mootness in the constitutional sense -- where an appeal is moot because it is "impossible for the court to grant any effectual relief whatever," Church of Scientology v. United States, 506 U.S. 9, 12 (1992) -- equitable mootness "occurs where the plan of reorganization is substantially consummated, and where it is not longer 'prudent to upset the plan of reorganization.'"  In re Arbors of Houston Assoc. Ltd. Partnership, No. 97-2099, 1999 WL 17649, at *2 (6th Cir. Jan. 4, 1999) (quoting UNR Indus., 20 F.3d at 769).  Thus, "a reviewing court may decline to consider the merits of a confirmation order when there has been substantial consummation of the plan such that effective judicial relief is no longer available -- even though there may still be a viable dispute between the parties on appeal." Manges, 29 F.3d at 1039.

A court should examine three factors in determining whether the doctrine of equitable mootness applies: "(1) whether a stay has been obtained; (2) whether the plan has been 'substantially consummated'; and (3) whether the relief requested would affect either the rights of parties not before the court or the success of

5

the plan." In re American HomePatient, Inc., 420 F.3d 559, 563 (6th Cir. Aug. 16, 2005).

**B.   Discussion**

There is no dispute that the USW did not seek or obtain a stay of the bankruptcy court's March 24, 2005 order granting §1114 relief.  Though failure to seek a stay "is not necessarily fatal to the appellant's ability to proceed," City of Covington, 71 F.3d at 1225-26, parties with objections "should act early and quickly, moving for stays where necessary to protect the status quo." Arbors of Houston, 1999 WL 17649, at *2.

Nor is there any doubt that the Plan has been substantially consummated.  The Court recently dealt with this same issue in adjudicating the USW's appeal of the bankruptcy court's orders authorizing the Debtors to reject collective bargaining agreements under §1113 of the Bankruptcy Code.  For the reasons explained in that order, the Plan has been substantially consummated. See Aug. 19, 2005 Opinion and Order in Case. No. 2:04-cv-1151, pp. 10-11.

With respect to the final factor -- whether the relief requested would affect either the rights of parties not before the court or the success of the plan -- the Debtors rely on the same argument they made in successfully moving to dismiss the §1113 appeal as moot.  The Court dismissed the §1113 appeal as moot upon finding that §1113 relief was integral to the confirmed plan of reorganization:

> A condition precedent to confirmation of the plan was that the debtors either enter into new collective bargaining agreements or obtain relief under §1113. See Plan of Reorganization, §10.1(c). . . . There was no factual dispute before the bankruptcy court that, without some modifications to reduce labor costs by $14.6 million, Ormet would have been forced to liquidate. . .

> . The modifications approved by the rejection orders enabled Ormet to achieve the labor cost savings necessary for it to obtain exit financing and successfully reorganize. . . . Section 1113 relief was at the core of every financial projection underlying the Plan.

Aug. 19, 2005 Opinion and Order in Case. No. 2:04-cv-1151, p. 13. The Court thus concluded that reversal on appeal would undermine the plan and threaten the company's viability.[2]

In this appeal of the §1114 order, the Debtors similarly argue that reversal of the §1114 order would cause the Plan to unravel. They argue that the cost savings realized by obtaining §1114 relief, about $5 million, is integral to the Plan's success. The Debtors emphasize that they obtained exit financing based on projections which incorporated the cost savings.

The Court, however, is not convinced that the situation at hand is like that in the §1113 appeal. In the prior appeal, the importance of §1113 relief to the Plan was clear from the Plan's language and from the efforts of the Debtors and Creditors' Committee to arrange financing and obtain §1113 relief before confirmation. Here, while the Plan made modifications to retiree benefits a condition precedent to confirmation, the Plan did not require §1114 relief in particular. Indeed, the Debtors admit in their brief that they intended to modify the retire benefits by means other than §1114. The Plan's language specifically contemplated the possibility that the Debtors might modify benefits without seeking §1114 relief. <u>See</u> Plan of Reorganization, §§6.4, 10.2(k). The Court recognizes that some modifications to retiree benefits were necessary to the Debtors achieving a certain level of

---

[2] The USW appealed the August 19, 2005 decision regarding equitable mootness. That appeal is currently before the Sixth Circuit.

cost savings, but it is somewhat incongruous to say that reversal of the §1114 order would unravel the Plan when confirmation took place without §1114 relief being obtained.

Accordingly, the Debtors' motion to dismiss the appeal as equitably moot is denied.

### III. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction under 28 U.S.C. §158(a) to hear bankruptcy appeals. A bankruptcy court's findings of fact must be upheld unless clearly erroneous. In re Downs, 103 F.3d 472, 476-77 (6th Cir. 1996); In re Southern Indus. Banking Corp., 809 F.2d 329, 331 (6th Cir. 1987); see also Bankr. R. 8013. A bankruptcy court's conclusions of law are reviewed de novo. In re Downs, 103 F.3d at 476-77; Stephens Indus. Corp., Inc. v. McClung, 789 F.2d 386, 389 (6th Cir. 1986).

### IV. MERITS OF THE USW'S APPEAL

#### A. Availability of §1114 Relief Post-Confirmation

The USW argues that the bankruptcy court erred in granting §1114 relief after the Plan had been confirmed. The USW does not argue that the bankruptcy court was without jurisdiction to consider the Debtors' application for §1114 relief. See generally In re Gordon Sel-Way, Inc., 270 F.3d 280, 288-89 (6th Cir. 2001) (discussing a bankruptcy court's post-confirmation jurisdiction). Rather, the USW argues that §1114 is not applicable after a plan is confirmed. In support of its argument, the USW cites the legislative history of §1114. The Senate Report for §1114 states that "modifications may be sought at any time prior to confirmation

8

of a reorganization plan." S. Rep. No. 100-119, at 6 (1987), as reprinted in 1988 U.S.C.C.A.N. 683, 688.

In response, the Debtors contend that nothing in the plain language of §1114, nor any case law, supports the USW's argument. The Court agrees. Section 1114 authorizes a bankruptcy court to enter an order modifying retiree benefits if certain procedural and substantive conditions are satisfied. See 11 U.S.C. §1114(f),(g). There is no temporal limitation stated in §1114 as to when relief is available. In other words, §1114 makes no distinction between pre- or post-confirmation in terms of the bankruptcy court's ability to approve modifications to retiree benefits.

The USW's reliance on legislative history to impose a temporal limitation on the availability of §1114 relief is not well-taken. The Court will not use legislative history to create a requirement to §1114 relief that simply does not appear in the statutory language. See Ratzlaf v. United States, 510 U.S. 135, 147-48, 114 S.Ct. 655, 662 (1994) (refusing to "resort to legislative history to cloud a statutory text that is clear"); Air Transport Ass'n of Canada v. FAA, 323 F.3d 1093, 1096 (D.C. Cir. 2003) ("[W]e do not read legislative history to create otherwise non-existent ambiguities."). Moreover, the bit of legislative history quoted by the USW does not support the assertion that a bankruptcy court cannot grant §1114 after confirmation. When read in context, the legislative history cited by the USW makes clear that a debtor may seek §1114 relief on multiple occasions after the bankruptcy petition is filed. See S. Rep. No. 100-119, at 6 (1987), as reprinted in 1988 U.S.C.C.A.N. 683, 688 (stating that the trustee "may make more than one application to modify retiree benefit

payments).  In the usual case, this would occur before confirmation, but nothing in the language or legislative history of §1114 confines relief to the pre-confirmation period.

The USW next argues that another provision of the Bankruptcy Code, 11 U.S.C. §1129, prohibits a bankruptcy court from granting §1114 relief after confirmation.  Section 1129 provides a list of prerequisites to the confirmation of a reorganization plan.  The USW points to the last of those prerequisites, §1129(a)(13), whereby a plan must provide for the continuation of retiree benefits "at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits."  Based on this language, the USW contends that all §1114 modifications must be obtained before confirmation.

This argument is likewise unconvincing.  The language of §1129 imposes no limitation on when §1114 relief can be granted.  Section 1129 simply requires that a plan provide for the same level of retiree benefits that §1114 protects after the bankruptcy petition is filed.  The bankruptcy court found that the Debtors' Plan satisfies §1129(a)(13), a finding the USW does not here appeal.  Section 1129 does not state that a debtor is foreclosed from seeking modifications after confirmation, and the USW cites no authority otherwise.

  **B. Requirements of §1114**

A bankruptcy court may authorize modifications to retiree benefits only if it finds that all of the statutory conditions have been met.  Section 1114 provides in relevant part:

10

(f)(1) Subsequent to filing a petition and prior to filing an application seeking modification of the retiree benefits, the trustee shall--

    (A) make a proposal to the authorized representative of the retirees, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the retiree benefits that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

    (B) provide, subject to subsection (k)(3), the representative of the retirees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1), and ending on the date of the hearing provided for in subsection (k)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such retiree benefits.

(g) The court shall enter an order providing for modification in the payment of retiree benefits if the court finds that--

    (1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (f);

    (2) the authorized representative of the retirees has refused to accept such proposal without good cause; and

    (3) such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities.

11 U.S.C. §1114(f),(g).

The USW argues that the bankruptcy court erred in finding that: (1) modifications to retiree benefits were necessary to permit the Debtors' reorganization; (2) the Debtors met at reasonable times to confer in good faith; (3) the USW lacked good cause to refuse to accept the modifications; (4) the modifications treated all affected parties fairly and equitably; and (5) the balance of the equities favored approval of §1114 relief.

With respect to the first objection, the USW argues that the bankruptcy court should have applied a more stringent definition of "necessary." The USW alleges that modifications must be necessary to prevent liquidation, rather than merely necessarily to permit reorganization. The USW cites Wheeling-Pittsburgh Steel Corp. v. United Steelworkers of America, AFL-CIO-CLC, 791 F.2d 1074 (3d Cir. 1986), where the court interpreted §1113(b)(1)'s use of the word "necessary" as meaning that proposed modifications to a collective bargaining agreement must be necessary to prevent liquidation.

The USW's argument is without merit. The plain language of §1114 requires that modifications be "necessary to permit the reorganization of the debtor," 11 U.S.C. §1114(f)(1), not that they be necessary to prevent liquidation. And the USW's reliance on Wheeling-Pittsburgh Steel is unavailing. Courts outside the Third Circuit have flatly rejected that case's interpretation of the word "necessary." See In re Mile Hi Metal Systems, Inc., 899 F.2d 887 892-93 (10th Cir. 1990) ("[W]e choose not to follow Wheeling-Pittsburgh."); Truck Drivers Local 807 v. Carey Transp. Inc., 816 F.2d 82, 88-89 (2d Cir. 1987) (criticizing Wheeling-Pittsburgh); In re Amherst Sparkle Market, Inc., 75 B.R. 847, 851 (Bankr. N.D. Ohio

1987); In re Walway Co., 69 B.R. 967, 973 (Bankr. E.D. Mich. 1987).

Turning to the remainder of the USW's objections, the Court finds that they amount to nothing more than differences of opinion with the bankruptcy court's findings of fact. A bankruptcy court's findings of fact must be upheld unless clearly erroneous. In re Downs, 103 F.3d 472, 476-77 (6th Cir. 1996). The USW rehashes the facts in a light most favorable to it without demonstrating how the bankruptcy court's findings were clearly erroneous. The USW fails to identify facts of record that show the bankruptcy court erred.

**V.    CONCLUSION**

Accordingly, the Debtors' August 22, 2005 motion to dismiss the appeal as equitably moot (doc. 9) is DENIED.

The USW's appeal of the bankruptcy court's March 24, 2005 order granting relief under 11 U.S.C. §1114 is DENIED. The bankruptcy court's decision is AFFIRMED.


                                    s/ James L. Graham        __
                                    JAMES L. GRAHAM
                                    United States District Judge

DATE: March 31, 2006